UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSHEANA RENEE
LEACH,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

Case No. 2:17-cv-12821

District Judge Arthur J. Tarnow

Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Rosheana Renee Leach, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability income (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (DE 10), the Commissioner's cross-motion for summary

judgment (DE 13), and the administrative record (DE 7).

### A.    Background and Administrative History

Plaintiff alleges her disability began on March 22, 2014, at the age of 47.

(R. at 125, 127.)  She lists several conditions (knee pain, hip pain, back pain, high

blood pressure, depression, insomnia, and mood swings) that limit her ability to

work.  (R. at 153.)  Her applications were denied on October 22, 2014.  (R. at 48-

85.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 86-87.)  ALJ Andrew G. Sloss held a hearing on April 27, 2016.  (R. at 26-47.)

He issued an opinion on June 6, 2016, which determined that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 8-25.)  On July 14,

2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5, 121-

124.)  Thus, ALJ Sloss's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 25, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 508 pages of medical

records, all of which was available to the ALJ at the time of his decision.  (R. at 25,

234-741 [Exhibits 1F – 16F].)  They will be discussed in detail, as necessary, below.

###    C.    The Hearing and Administrative Decision

Plaintiff, who was represented by counsel, and vocational expert Michele Robb testified at the April 27, 2016 hearing.  (R. at 26-47.)  On June 6, 2016, ALJ Sloss issued his decision.  (R. at 8-25.)  Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 22, 2014, the alleged onset date.  (R. at 13.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  obesity, cardiomyopathy, and osteoarthritis.  (*Id*. at 13-15.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 15.)  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC to "perform light work . . . [,]" except "she can only frequently climb ramps or stairs and balance, and she must avoid concentrated exposure to hazards."  (*Id*. at 15-18.)  At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as a cleaner and as a

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

childcare worker, as such work did not require the performance of work-related activities precluded by her RFC.  (R. at 18-19.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 22, 2014, through the date of the decision.  (R. at 20.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

4

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff sets forth five arguments:

1.    The ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of the Plaintiff's treating physicians.

5

2.      The ALJ violated SSR 96-8p by ignoring the opinion of the State agency non-examining physician and by failing to provide legitimate reasons for his obvious rejection of this evidence.

3.      The ALJ violated SSR 96-8p by failing to consider the effect of the Plaintiff's impairments of Depressive Disorder, Obsessive Compulsive Disorder and Bi-Polar Disorder.

4.      The substantial evidence of record does not support a finding that Plaintiff can perform sustained work activities.

5.      Given the unrebutted evidence of record that the Plaintiff uses a cane, the ALJ's finding that she can perform the exertional demands of light work cannot be sustained.

(DE 10 at 3, 10-21.)[2]

The Commissioner argues that her decision is supported by substantial evidence.  (DE 13 at 2, 10-19.)

### 1.      Opinion evidence generally

---

[2] A note about the organization of the Court's analysis is in order.  As the Commissioner points out, Plaintiff's **1st** statement of error does not make clear "which opinions were allegedly inadequately weighed[,]" at least to the extent Plaintiff is relying upon 20 C.F.R. §§ 404.1527, 416.927 (as opposed to a more general argument that the ALJ did not adequately consider these records).  (*See* DE 13 at 11 n.2 (citing DE 10 at 10-12).)  Therefore, the Court's analysis addresses the ALJ's specific assignments of weight to two mental health professionals and three physical health professionals.  (*See* R. at 14, 17.)  Moreover, analyses of the **1st** and **2nd** statements of error have been combined, as these two arguments concern opinion evidence.  Finally, because the **1st**, **2nd**, and **4th** statements of error each cite both mental and physical evidence, the Court's analysis is divided into two sections:  (1) the ALJ's consideration of physical health evidence; and, **(2)** the ALJ's consideration of mental health evidence.  Plaintiff's **3rd** and **5th** statements of error are addressed within those sections and have been labeled, accordingly.

ALJ Sloss stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (R. at 15.)  Plaintiff disagrees and claims that the ALJ did not comply with 20 C.F.R. §§ 404.1527, 416.927 by "failing to accord adequate weight to the opinion of the Plaintiff's treating physicians." (DE 10 at 10-12.)

The SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] give[s] [a Plaintiff's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "[T]he notice of the determination or decision [regarding a denial of benefits] must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (S.S.A. July 2, 1996).

### 2.    The ALJ's treatment of physical opinion evidence

### a.    Cardiomyopathy and congestive heart failure

On February 7, 2016, Syed Mahmood, M.D., saw Plaintiff for unstable angina/cardiomyopathy and performed various angiographies. (R. at 393-394.) From April 1, 2016 through April 7, 2016, Plaintiff was admitted to Oakwood Hospital and Medical Center. (R. at 436-475.)  During that time, Dr. Obeid noted

a past diagnosis of congestive heart failure (CHF) (R. at 448), and Nour S. Juratli,

M.D. implanted a right ventricular defibrillator lead and a Guidant single-chamber

defibrillator, as well as an "implantable cardioverter-defibrillator . . . ."  (R. at 452-

453.)

   After acknowledging the cardiomyopathy and CHF diagnoses, the ICD

installation, and the April 11, 2016 chest x-ray, which revealed that the pacemaker

was "in position as described with no evidence of pneumothorax or . . . no acute

intrathoracic disease[,]" (R. at 498), the ALJ stated:  "[a]lthough this condition

could impose significant physical limitations, it is currently *too soon* to tell or

prognosticate that the claimant will experience any such limitations for 12

consecutive months."  (R. at 17 (emphasis added).)

   Plaintiff takes issue with this statement, by specifically citing several

records, such as:

- July 15, 2014 notes from McLaren Regional Medical Center, where Plaintiff complained of chest pain (R. at 335, 337)

- July 16, 2014 progress notes from McLaren Internal Medicine Residency Group Practice, which reflect, in part, a follow up from the emergency room visit for chest pain (R. at 330)

- April 11, 2016 provider notes from D'Ann M. Ruiz, M.D., to whom Plaintiff presented with chest pain (R. at 490, 492)

- April 12, 2016 cardiology consultation notes from Mohamad A. Sobh, D.O., which reflect presentation with chest pain and pain "over the left chest area where the AICD was placed."  (R. at 494)

8

(DE 10 at 11.)  Although Plaintiff claims that "the record already establishes

complications dating back to 2014 for her numerous heart complications[,]" the

ALJ here ultimately concluded that "[t]he record evidence shows that the

claimant's obesity, osteoarthritis, and cardiomyopathy limited her work capacity to

a restricted range of light work."  (DE 10 at 11, 18; R. at 18.)  The ALJ then

explained:

> To the extent that the claimant alleges that she is more limited than
> credited above, that position is *not consistent* with the longitudinal
> treatment record.  Notably, the diagnostic imaging results do not show
> serious degenerative processes anywhere in her body that would limit
> her to sedentary work.  The evidence does not show how her obesity
> compounded her other impairments.  Although her recent
> cardiovascular exacerbation required invasive procedures, it is *too
> soon* to determine whether the claimant will remain in this
> exacerbated state, or whether she will return to her baseline that
> historically caused only dyspnea and shortness of breath without
> syncope.

(*Id.* (emphasis added).)  Plaintiff's aforementioned citations to records from July

2014 and April 2016 do not convincingly attack this reasoning.  Moreover,

Plaintiff has not cited any case law to prohibit such a ripeness finding.  *See*, *e.g.*,

*Harris v. Comm'r of Soc. Sec.*, No. 09-CV-14184, 2010 WL 2884643, at *5 (E.D.

Mich. June 28, 2010), *report and recommendation adopted*, No. 09-14184, 2010

WL 2884644 (E.D. Mich. July 20, 2010) (acknowledging a CE report, which

concluded that "'[i]t is too soon to determine what the response to treatment will

be and if severity is likely to continue for a year or more ....[']"); *Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (where Plaintiff argued it was "too early" for the Court to characterize a single examination as treating or not treating, "[t]he question is whether Lian had the ongoing relationship with Kornecky to qualify as a treating physician *at the time he rendered his opinion*.") (emphasis in original).

### b.   Mohammed M. Obeid, D.O. (treating physician)

In a letter dated April 26, 2016, Dr. Obeid noted that Plaintiff "will not be able to work for the next six to twelve months . . . [,]" due to cardiomyopathy, obstructive sleep apnea, hypertension, and bilateral DJD/pain in the knees.  (R. at 531.)  As to this piece of evidence, the ALJ expressly stated:

> As for the opinion evidence, the claimant's treating doctor, Mohammed [Obeid], D.O., opined that the claimant could not work for six-to-twelve months after she received the ICD surgery so that she would have adequate recovery time (13F [R. at 531]).  The undersigned gives *great weight* to this opinion because the claimant clearly required a recovery period following this invasive procedure.  However, the period of restriction (six-to-twelve months) is too brief to meet the twelve-month durational requirement, so this opinion does *not support* the claimant's position that her baseline condition prevented her from working indefinitely.

(R. at 17 (emphases added).)  Plaintiff's reference to this letter as confirmation of her "Bilateral DJD [degenerative joint disease] / pain in knees," is not a developed challenge to the ALJ's assignment of weight to Dr. Obeid's April 26, 2016 opinion.  (*See* DE 10 at 17 (4th Statement of Error), R. at 531.)

At some point, Dr. Obeid referred Plaintiff for a physical therapy evaluation, which was conducted on May 2, 2016 at Top Rehab in Dearborn, Michigan.  (R. at 738-741.)  The assessment reflects that Plaintiff's pain "is related to OA at both knees," and that her "last physical therapy was on 2014 due [to] lack of insurance." (R. at 740.)  The treatment plan included using moist heat packs on both knees for 20 minutes, manual therapy to both knees, neuromuscular re-education and balance training, gait training on level surfaces, therapeutic exercise to both knees and bilateral lower extremities, and home exercise program.  (*Id.*)  It was recommended that Plaintiff attend 3 times per week for 4 weeks, and his rehabilitation potential was "good."  (*Id.*)  The ALJ cited this evaluation in support of his statement that Plaintiff's "knee pain was treated with analgesics, physical therapy, and steroid injections, and she admitted significant improvement from the injections."  (R. at 16 (citing Ex. 3F at 7, 13 [R. at 288, 294], Ex. 16F [R. at 738-741]).)  Thus, Plaintiff's assertion that the ALJ "completely ignored the very recent occupational therapy records provided by Top Rehab Services" is simply inaccurate.  (DE 10 at 11-12.)[3]

### c.    R. Scott Lazzara, M.D. (consultative examiner)

---

[3] The Court suspects that Plaintiff's references to the "Physical Therapy Evaluation" as "occupational therapy records" or as having been conducted by "occupational therapists" are consequences of Exhibit 16F having been labeled as "physical/occupational therapy records."  (DE 10 at 11, 14; R. at 25, 738-741.)

Dr. Lazzara performed a medical evaluation on October 2, 2014.  (R. at 362-368 [Ex. 9F].)  Among other things, Dr. Lazzara opined that clinical evidence supported the need for a walking aid.  (R. at 363.)  In diagnosing arthropathy, he stated:

> The patient's hip and back appear to be compensatory for the left knee. She had significant deterioration to the knee joint. There were no findings of laxity but she did have synovial thickening and associated crepitance. Her power was stable and there were no active radicular symptoms. She compensates with a guarded gait and associated limp. *The use of a cane for pain control and on uneven ground for balance would be helpful.* She appears to be slowly declining due to progressive deconditioning. At this point she may require operative intervention for remediability. She is at risk for further deterioration to the hips and back over time due to compensating for the knee.

(R. at 368 (emphasis added).)  After describing Dr. Lazzara as a "medical consultative examiner," and describing several of his observations, the ALJ assigned the opinion "partial weight . . ." and explained:

> The undersigned gives partial weight to this opinion. The undersigned recognizes that the medical findings and observations of the examiner are *congruent with* the medical findings and diagnostic imaging results scattered throughout the medical record. That evidence shows that the claimant has *some exertional limitations*, but it *does not support* a finding that the claimant is restricted to *sedentary work*. As stated above, it is too early to determine, based on the record, whether the claimant's recent cardiovascular exacerbation will meet, or is likely to meet, the durational requirement. And it is the claimant's burden at this stage of the sequential evaluation process.

(R. at 17 (emphases added).)  Thus, in discounting Dr. Lazzara's opinion(s), the ALJ took into consideration the lack of a treatment relationship (based on Dr.

12

Lazzara's role as a CE), as well as the examining relationship, supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(1)-(4).

Plaintiff argues that Dr. Lazzara's conclusions "are congruent with the diagnostic testing and medical findings[.]"  (DE 10 at 14.)  However, even if Dr. Lazzara's findings are inconsistent with the RFC's "light work" exertional limitations, Plaintiff has not shown error in the ALJ's assignment of only "partial weight" to Dr. Lazzara's opinion.  More importantly, it is not this Court's job to re-weigh the evidence.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).

### d.    The need for a cane

Here, the Court considers Plaintiff's 5th statement of error - that there is "unrebutted evidence of record that [she] uses a cane," and, thus, cannot perform the exertional demands of light work.  (DE 10 at 19-21.)  Preliminarily, I note the ALJ's Step 3 conclusion that "[t]he evidence does not show a gross anatomical deformity of a major peripheral joint that results in an inability to ambulate effectively or to perform fine and gross movements effectively."  (R. at 15.)  Also, while the ALJ acknowledged Plaintiff's cane at the April 27, 2016 hearing (R. at 39), Plaintiff testified that she needed a cane to walk (*id*.), and the ALJ's decision

13

expressly acknowledges Plaintiff's claimed use of a wheelchair, cane and/or brace/splint within her Function Report (R. at 16, 171), the Function Report itself noted that these were not prescribed, and, she has not challenged the ALJ's diminished credibility determination in this appeal.

Perhaps more importantly, Plaintiff supports her need for an assistive device with citations to Dr. Lazzara's report and the physical therapy evaluation, which, *inter alia*, documents severe pain at both knees, difficulty with transfer and ambulation, inability to negotiate stairs with left leg, difficulty with basic activities of daily living at the standing position (for which she needs assistance from another person), etc.  (DE 10 at 21, R. at 368, 740.)   As Plaintiff points out within the *preceding* statement of error, Dr. Lazzara notes that she "was unable to squat," her "hip and back appear to be compensatory for the left knee[,]" and she "compensates with a guarded gait and associated limp."  (DE 10 at 17 (4th Statement of Error), R. at 365, 368.)  However, while Dr. Lazzara indicates that clinical evidence supports the need for a walking aid "for pain control and *on uneven ground* for balance . . . [,]" he also observed that Plaintiff "*does not use* an assistive device" and "had *no difficulty* getting on and off the examination table[.]"  (R. at 363, 364, 365, 368 (emphases added).)

Finally, as will be set forth in further detail below, the ALJ permissibly assigned "significant weight" to Dr. Nguyen's physical RFC assessment, which

revealed, *inter alia*, that:  (a) she could "occasionally" crouch (*i.e.*, bending at the knees); and, (b) Plaintiff's environmental limitations – in this case, to "[a]void concentrated exposure" to hazards - were based upon "uneven rough terrain due to DJD of L knee and obesity."  (R. at 17, 57.)  In addition, his explanation further noted "diminished ROM of both knees."  (R. at 57.)  Yet, Dr. Nguyen's adjudication of light work did not include the need for an assistive device.  (*Id*.)

### e.    Sustained physical work activity

If "[h]er mobility is greatly affected" by the knee, back, and hip conditions assessed by Dr. Lazzara, the negative impact of which is allegedly "confirmed" by her physical therapist and Dr. Obeid and Dr. Lazzara, Plaintiff's 4th statement of error does not explain how the physical RFC limitations of light work with limited postural and environmental limitations ─ albeit without an assistive device, which Plaintiff did not use at the time of the October 2, 2014 CE and which Dr. Lazzara opined "would be helpful" for "pain control" and on "uneven ground for balance" ─ fail to address her musculoskeletal limitations such that she cannot "perform sustained work activities."  (DE 10 at 17 (4th Statement of Error), 364, 368.)  The same can be said of Plaintiff's references to her cardiovascular

15

diagnosis of CHF and the related treatment on February 7, 2016 and in April 2016. (DE 10 at 18, R. at 393-394, 436-476.)[4]

In sum, Plaintiff has failed to show error in the ALJ's assignment of "partial weight" to Dr. Lazzara's opinion. Furthermore, to the extent Plaintiff relies upon the physical therapy evaluation, "[t]he opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248–249 (6th Cir. 2015) (citations omitted).

### f.    Quan Nguyen, M.D. (state agency reviewer)

In addition to the ALJ's assignments of weight to Dr. Obeid's April 26, 2016 opinion and Dr. Lazzara's CE report, which Plaintiff has either not challenged or in which she has not demonstrated error, the ALJ assigned "significant weight" to the physical RFC assessment of Quan Nguyen, M.D., who noted, *inter alia*:  "Based on the totality of evidence, compounding by the obesity,

---

[4] The Court is not sure what to make of Plaintiff's statement within her 4th statement of error about her "recurrent digestive issues which cause severe abdominal pain and cramping, dating back to 2011[,]" for which she cites:  (a) an October 2011 hospitalization for chest pain resulting in a diagnosis of angina; (b) a November 11, 2013 admission for, among other ailments, acute abdominal pain secondary to enteritis; and, (c) a January 19, 2014 admission, when Plaintiff went to the emergency room with complaints of abdominal pain, distention and nausea. (DE 10 at 18, 234-235, 250-254, 260.)  The Court will not address it further, as it falls within a paragraph that focuses on Plaintiff's musculoskeletal and cardiovascular conditions and is otherwise undeveloped.

light RFC is adjudicated."  (R. at 57).  Specifically, the ALJ noted:  "it is *consistent* with the medical findings in the treatment notes, is *supported* by the observations of the medical consultative examiner, and is *consistent* with the claimant's history of conservative treatment for osteoarthritis. For the reasons stated above, this opinion is not undermined by the claimant's recent cardiovascular exacerbation."  (R. at 17 (emphases added).)

### g.    Summation

In the end, the factors considered by the ALJ in weighing the medical opinions of Drs. Obeid, Lazzara and Nguyen are "clear to [this] subsequent reviewer[]" and the ALJ gave good and clear reasons for the specific weight assigned to each of them.  SSR 96-2P, 20 C.F.R. §§ 404.1527(c)(2),(3), 416.927(c)(2),(3).  As such, the ALJ's RFC determination of light work, with some further postural and environmental limitations, should stand.

### 3.    The ALJ's treatment of mental opinion evidence

### a.    OCD, bipolar disorder and depression

At Step 2, the ALJ discussed obsessive compulsive disorder (OCD), bipolar disorder and depression.  First, the ALJ expressly cited the June 11, 2014 behavioral health screening by Cynthia Montney MSW, LMSW, CAADC.  (R. at 13.)  Apparently referencing the description of Plaintiff's mood as "anxious" and "sad/depressed," (*see* R. at 308), the ALJ acknowledged that Plaintiff "started

treatment in June of 2014, at which time she manifested some signs of anxiety and depression[,]" but the ALJ also noted that Plaintiff "received no further psychological or psychiatric treatment for these conditions."  (R. at 13-14.)  To the extent Plaintiff asks the Court to focus on Plaintiff's subjective representations to the therapist Montney (*see* DE 10 at 16, 306), she has not challenged the ALJ's credibility determination in this appeal.[5]

Second, the ALJ noted Plaintiff's "report[] that her physical symptoms, particularly those new ones from her ICD implant, were causing some depression, but she generally denied having any other psychological symptoms."  (R. at 14.)  Also, the ALJ cited Dr. Lazzara's CE report, which noted that Plaintiff was "currently in college," as evidence of "significant mental . . . functioning."  (*Id.*, R. at 364.)

   **b.     Consultative examiner Karen Marshall, Psy.D., L.P.**

---

[5] Plaintiff characterizes this visit as an "attempt" to receive treatment for mental illness but contends she was "turned away."  (DE 10 at 11, 16; R. at 312, 318.)  (DE 10 at 13.)  However, while the record reflects that Plaintiff was "not admitted," the screening report states she was referred to a "Medicaid HMO," and given a "list of Medicaid HMO providers . . . ."  (R. at 318.)  If this citation is the only basis for Plaintiff's claims that she lacked insurance or was "uninsured," (DE 10 at 13, 16), Plaintiff has not shown that she was ineligible for Medicaid or that she made any attempt to be seen at any of the Medicaid mental health providers available to her.

At Step 2, the ALJ considered Karen Marshall, Psy.D., L.P.'s October 1, 2014 CE report.  (R. at 356-359.)  Dr. Marshall's medical source statement provides:

> At this time, it appears that the client will have difficulty completing tasks in a workplace environment due to decrease in concentration, forgetfulness.  In addition and more significantly, she will have problems interacting appropriately socially.  She is reporting severe irritability and responds to benign situations with verbal and physical aggression.

(R. at 359.)  In addition to acknowledging the June 11, 2014 diagnosis of depressive disorder not otherwise specified (which, incidentally, was in a "rule out" status), Dr. Marshall diagnosed unspecified bipolar disorder and obsessive compulsive disorder (OCD).  (R. at 359, 312.)

After recognizing Dr. Marshall as a "psychological consultative examiner," and assigning little weight to her opinion that Plaintiff's "mental impairments cause significant social and cognitive limitations," the ALJ stated:

> . . . this conclusion *does not match* the medical findings from this examination, which show that the claimant was grossly normal and exhibited only some anxiety and irritability during the exam (8F). The answers during the mental status portion of the exam also gave *no indication of psychological symptoms or cognitive limitations*.

(R. at 14 (emphases added).)  Thus, it is clear that the ALJ considered the lack of a treatment relationship (based on Dr. Marshall's role as a CE), as well as the examining relationship, supportability and/or consistency factors, when

discounting Dr. Marshall's opinion.  20 C.F.R. §§ 404.1527(c)(1)-(4),

416.927(c)(1)-(4).

Plaintiff challenges the ALJ's interpretation of Dr. Marshall's mental status

evaluation as giving "no indication of psychological symptoms or cognitive

limitations."  (DE 10 at 12.)  In support of this statement, Plaintiff highlights

various portions of the record, including Dr. Marshall's recognition of the June 11,

2014 behavioral health screening diagnosis, Dr. Marshall's own diagnoses and

medical source statement, and Dr. Marshall's observation that Plaintiff "did not

appear to exaggerate or minimize symptoms[,]" (R. at 312, 358-359).  (*See* DE 10

at 13.)  Plaintiff also cites Dr. Marshall's medical source statement to illustrate

behaviors that "are common in individuals suffering with bi-polar disorder[]"

and/or OCD.  (DE 10 at 16; *see also* DE 10 at 18 (4th Statement of Error).)

Preliminarily, it seems logical that the ALJ's reference to the "mental status

portion of the exam" is commentary on those portions of the CE report within the

section labeled "description of mental status," such as:  (a) "attitude/behavior," (b)

"stream of mental activity," (c) "mental trend/thought content," and, (d)

"emotional reaction."  (R. at 358.)  However, to the extent Plaintiff takes the ALJ

to task for not acknowledging Dr. Marshall's bipolar and OCD diagnoses, the ALJ

acknowledged at Step 2 that Plaintiff had been treated for OCD and bipolar

disorder, further acknowledged some notes about depression, and, ultimately,

concluded that Plaintiff's medically determinable impairments of OCD and bipolar disorder were "nonsevere."  (R. at 13-14.)  Plaintiff's statements of error do not expressly challenge the ALJ's Step 2 determinations.  (DE 10 at 3.)  Instead, although Plaintiff cites the ALJ's Step 2 finding that Plaintiff's OCD and bipolar disorder did not "cause more than minimal limitation . . . [,]" Plaintiff's 3rd statement of error is based upon SSR 96-8p and, thus, concerns the recognition of these impairments within the RFC.  (DE 10 at 14-16, R. at 14.)  And, to the extent Plaintiff focuses on Dr. Marshall's notation that Plaintiff "report[ed] severe irritability . . . [,]" (R. at 359), this goes to the ALJ's credibility determination, which Plaintiff does not challenge in this appeal.

### c.      State agency reviewer Blaine Pinaire, Ph.D.

On October 7, 2014, state agency reviewer Blaine Pinaire, Ph.D. completed a mental RFC assessment, which concluded that Plaintiff was "moderately limited" in several areas.  (R. at 57-59.)  Dr. Pinaire additionally explained:

> Despite moderate limitations secondary to the MDI this claimant is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; respond adequately to supervision, coworkers and work situations; and deal with most changes in a routine work setting. While there are some issues with concentration, there is sufficient concentration to perform simple 1 - 2 tasks, all on a routine and regular basis.

(R. at 59.)  Relatedly, the ALJ noted:

> State agency nonexamining psychological consultant, Dr. Blaine
> Pinaire, Ph.D., opined that the claimant's mental impairments caused
> moderate social and cognitive limitations (1A).  However, the
> undersigned gives *little weight* to this opinion because it too *does not
> align* with the claimant's presentation during the treatment notes and
> during the psychological consultative examination.  In short, the
> medical findings in the treatment notes and consultative examination
> reports [are] the best indicator[s] of the claimant's *longitudinal*
> baseline psychological condition, and this evidence *does not show* the
> claimant manifesting significant and persisting psychological
> symptoms interfering with the claimant's daily activities, socialization,
> or cognition.

(R. at 14 (emphases added).)  Thus, it is clear that the ALJ considered the lack of

an examining or treatment relationship (based on Dr. Pinaire's role as a non-

examining consultant), as well as the supportability and/or consistency factors

when discounting Dr. Pinaire's opinion.  20 C.F.R. §§ 404.1527(c)(1)-(4),

416.927(c)(1)-(4).  In other words, Plaintiff's contentions that the ALJ violated

SSR 96-8p "by ignoring the opinion of the State agency non-examining physician"

and "by failing to provide legitimate reasons for his obvious rejection of this

evidence[,]" (DE 10 at 12), is unavailing.

### d.  The omission of mental health limitations within the RFC

In her 3rd statement of error, Plaintiff argues that the ALJ violated SSR 96-

8p by not considering the effect(s) of her depressive disorder, obsessive

compulsive disorder, and bi-polar disorder "in any significant detail . . . ."  (DE 10

at 14-15.)  "In assessing RFC, the adjudicator must consider limitations and

restrictions imposed by all of an individual's impairments, even those that are not

'severe.'"  SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996).  The ALJ did

so here, albeit within his Step 2 discussion.  He expressly cited therapist Montney's

behavioral health screening and had "discretion to assign it any weight he fe[lt]

appropriate . . . [,]" *Noto*, 632 F. App'x at 248–249.  (R. at 13 R. at 306-319 [Ex.

4F].)  The ALJ then made assignments of "little weight" to the psychological

opinion evidence from Drs. Marshall and Pinaire.  (R. at 14.)  Ultimately, the ALJ

determined that Plaintiff's "medically determinable mental impairments of OCD

and bipolar disorder, considered singly and in combination, do not cause more than

minimal limitation in the claimant's ability to perform basic mental work activities

and are therefore nonsevere."  (*Id.*)  That this conversation occurred at Step 2 does

not mean that the ALJ did not consider these mental health impairments in forming

Plaintiff's RFC.  Consistently, the ALJ's RFC determination did not include any

mental health limitations, such as those related to understanding and memory,

sustained concentration and persistence, social interaction, or adaptation.  (R. at

15.)

### e.    Sustained mental work activity

Plaintiff argues that she cannot "perform sustained work activities."  (DE 10

at 17-19.)  This statement of error contains only one express citation to a mental

health record – the CE report of licensed psychologist, Dr. Marshall.  (DE 10 at 18,

R. at 359.)  However, as noted above, Plaintiff has not successfully challenged the ALJ's treatment of Dr. Marshall's CE report.  Beyond that, and despite Plaintiff's sweeping statement that "[m]edical evidence, as well as lay testimony, continually confirms that these various . . . mental disabilities would preclude not only Plaintiff's past employment as a janitor or a child care worker[,] but any other employment[,]" (DE 10 at 18), she fails to cite to the mental health evidence and lay testimony upon which she relies.  The Court will not perform a search of the record and will not guess at what she intends to rely upon, in order to put flesh on this otherwise skeletal argument.

### 4.    Similarly undeveloped credibility arguments

Finally, to the extent Plaintiff's 4th statement of error relies upon her function report and/or hearing testimony to support her "daily living challenges[,]" and/or a conclusion that she cannot perform her past employment as a janitor or a child care worker, let alone "any other employment[,]" (DE 10 at 17-19), she, again, has not put forth a developed credibility argument.  Plaintiff suggests that the ALJ should have adopted the VE's testimony in response to questions regarding:  (a) absenteeism; (b) a sit/stand option; (c) not being able to bend or stoop; (d) being "off task 20% or more of the day . . . [;]" or, (e) taking unscheduled breaks.  (DE 10 at 18-19, R. at 44-46.)  However, this statement of error does not cite a credibility regulation or corresponding SSR.  Moreover, it is

24

worth noting that Dr. Nguyen, to whose opinion the ALJ assigned "significant weight," opined that Plaintiff could frequently stoop and occasionally crouch.  (R. at 17, 57.)

In this case, the ALJ stated that he complied with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 96-4p and concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision."  (R. at 15, 17-18.)  Plaintiff has failed to put forth a developed challenge to the ALJ's credibility determination, and the Undersigned will not give this waived issue further attention.  *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997).

### F.    Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 17, 2018          s/*Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on August 17, 2018, electronically and/or by U.S. Mail.

s/Michael Williams_____
Case Manager for the
Honorable Anthony P. Patti
